UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARFA G. B.,

              Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

Case No. 1:24-cv-01982-AR

OPINION AND ORDER

_____

**ARMISTEAD, United States Magistrate Judge**

Marfa G. B. seeks judicial review of the Commissioner's final decision denying Social

Security benefits. She challenges the Administrative Law Judge's findings regarding her

subjective symptom testimony, the medical opinions of Thomas Shields, Ph.D., Danny Tudor,

MD, and Jaimee Bierhaus, NP, and two lay witness opinions. (Pl.'s Br. at 3-21.) As explained

below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for Title II Disability Insurance Benefits (DIB) in June 2021, alleging disability onset as of May 18, 2021. (Tr. 16.) Her application was denied, and plaintiff requested, and was granted, a hearing before an ALJ. (Tr. 51-77.) On May 13, 2024, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 16-29.) Plaintiff requested review of the hearing decision, which the Appeals Council denied in September 2024. (Tr. 190-91, 1-7.) Plaintiff now seeks review of that decision.

## ALJ'S DECISION

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential evaluation process.[1] At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity (SGA) since May 2021, the alleged onset date. (Tr. 18.) At step two, the ALJ determined that plaintiff had the following severe impairments: obesity, scoliosis, bilateral knee arthritis, bilateral ankle degenerative joint disease, bilateral pes planus, left shoulder degenerative joint disease, anxiety, and depression. (Tr. 18.) At step three, the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 19.) As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that she had the ability to perform light work with these added limitations:

---

[1]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

> [S]he can occasionally lift and carry up to 20 pounds and frequently lift and carry
> 10 pounds or less. The claimant can sit for six hours of an eight-hour day and
> stand or walk in combination for no more than six hours of an eight-hour day. The
> claimant can push and pull as much as she can lift and carry. She may only
> occasionally reach overhead with the left upper extremity and frequently reach in
> other directions with the left upper extremities. The claimant may only
> occasionally climb ramps and stairs but must avoid ladders, ropes, or scaffolds.
> She may only occasionally stoop, kneel, crouch, and crawl. The ability to
> understand, remember, and carryout instructions is limited to performing simple
> and routine tasks. Use of judgment is limited to simple work-related decisions.
> Interaction with supervisors, coworkers, and the general public can be done
> occasionally. Dealing with changes in a workplace setting is again limited to
> simple work-related decisions. Time off-task, in addition to normal breaks, would
> be up to [five percent] scattered throughout a normal eight-hour workday.

(Tr. 20.)

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (Tr. 27.) In addition, the ALJ found jobs at step five that existed in significant numbers in the national economy that plaintiff could perform considering her RFC, including the representative occupations of marking clerk, routing clerk, and collator operator. (Tr. 28.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.    *Subjective Symptom Testimony*

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for discounting her subjective symptom testimony. (Pl.'s Br. at 3-13.) Determining the credibility of a claimant's symptom testimony requires a two-step analysis from the ALJ. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015*; Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff asserts that her testimony regarding the loss of mobility of her left arm was erroneously rejected by the ALJ, that he provided no explanation of how plaintiff's mental health treatment was "conservative and routine[,]" and that her activities of daily living (ADLs) do not undermine her testimony. (Pl.'s Br. at 14-15.)

*Inconsistency with Objective Medical Evidence.* The ALJ discounted plaintiff's testimony about the limiting effects of her physical and mental health impairments by first finding inconsistency with objective medical evidence. (Tr. 21-25.) The ALJ summarized parts of the medical record, showing inconsistency between the record and plaintiff's testimony regarding her shoulder and ankle problems, as well as her PTSD, anxiety, and depression. (Tr. 21-25.) Although an ALJ may use "inconsistent objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (emphasis added) (cleaned up); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-38, 1040 (9th Cir. 2007). The ALJ failed to do so here.

### a. Shoulder and Ankle Impairments

The ALJ acknowledged plaintiff's testimony regarding her musculoskeletal impairments that prevent her from working—her bilateral shoulder degenerative joint disease and the

osteochondritis dissecans stage II in her right ankle.[2] (Tr. 21-22.) The ALJ discussed portions of the record supporting plaintiff's testimony, stating that "[i]maging has revealed supraspinatus tendinosis without rotator cuff tear and chronic grade [three] acromioclavicular (AC) joint separation with severe AC joint osteoarthritis. Consistent with shoulder pathology seen on imaging, examinations have also revealed related deficits in functionality." (Tr. 21, citing Tr. 694-95, 619.) The ALJ noted that during plaintiff's consultative examination in April 2023, a "reduced range of motion was seen in the shoulders bilaterally, worse on the left." (Tr. 21, citing Tr. 704-06.) Even so, the ALJ observed that plaintiff "declined injections" but attended physical therapy that improved her symptoms "a bit." (Tr. 22, citing Tr. 762, 836, 844.) The ALJ also pointed to plaintiff's most recent consultative examination where she was able to lift, handle, and carry light objects as evidence to undermine her shoulder pain allegations. (Tr. 24, citing Tr. 696-710.) Ultimately, the ALJ concluded that he "carefully considered [plaintiff]'s left shoulder pathology and resulting symptoms when limiting overhead and lateral reaching on the left." (Tr. 22.)

As to plaintiff's right ankle impairments, the ALJ stated that plaintiff's "ankle problems have become more prominent in recent treatment notes." (Tr. 22.) The ALJ then acknowledged plaintiff's complaints of continued bilateral ankle pain and cited an unremarkable x-ray from 2021 with mild degenerative changes. (Tr. 22, citing Tr. 844, 847, 858.) Two physical

---

[2]     Osteochondritis dissecans is a joint condition in which bone under the cartilage of a joint dies due to lack of blood flow. This bone and cartilage can then break loose, causing pain and possibly hindering joint motion. *Osteochondritis Dissecans*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/osteochondritis-dissecans/symptoms-causes/syc-20375887 (last visited February 18, 2026).

examinations were compared, one showing a slow gait with pain behavior, and another showing a normal, reciprocal gait. (Tr. 22, citing Tr. 841, 713.) The ALJ mentioned that in September 2023, her foot pain was so poorly controlled that she fell and continuously rolled her ankle. (Tr. 22, citing Tr. 799.) Further examination showed antalgic gait favoring the right foot, with her provider indicating concern about the instability of plaintiff's right ankle. (Tr. 22, citing Tr. 800-01.) Lastly, the ALJ discussed plaintiff's most recent MRI showing her right ankle osteochondritis dissecans stage II, which supports her allegations of ankle instability. (Tr. 22, citing Tr. 748.) Nevertheless, the ALJ relied on plaintiff's consultative examinations showing reciprocal gait and her ability to get up and down from the examination table without difficulty and walk on heels and toes without difficulty. (Tr. 24-25, citing Tr. 703, 676-77.)

Plaintiff challenges the ALJ's conclusions, for two reasons: (1) the ALJ provided no explanation or support to conclude that she was limited to no more than occasional overhead reaching but could still frequently reach in other directions (Pl.'s Br. at 7-9); and (2) the evidence the ALJ used to discount her lower extremity complaints is "not relevant" to her actual alleged symptoms and limitations, and that the "normal" objective findings cited by the ALJ "fail to demonstrate a capacity to walk more quickly or for longer duration that [plaintiff] alleged" (Pl.'s Br. at 10). The court agrees with both reasons.

The ALJ summarized medical evidence that he found undermined plaintiff's testimony by focusing on the evidence supporting his conclusion even when contrary evidence appeared in the same treatment notes. (Tr. 21-25.) An ALJ may not "cherry pick" evidence without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding ALJ may not "cherry pick" evidence that disfavors disability without considering its context in

record); *Garrison*, 759 F.3d at 1017 (holding an ALJ may not "cherry-pick" from mixed results to support a denial). For example, the ALJ stated that "despite her left shoulder pathology, she was nonetheless able to lift, handle, carry light objects . . . She has also denied shoulder injections." (Tr. 24, citing Tr. 696-710, 832.) Although the consultative examination shows she can carry and lift light objects, the same examination notes show that she had a reduced range of motion in her left shoulder below what is considered "normal" for both abduction and flexion. (*See* Tr. 705.) The examiner also found that an MRI supported plaintiff's grade three AC separation of the joint plus arthritis, and that physical therapy resulted in improved strength but did not help her pain. (*See* Tr. 708.)

Likewise for plaintiff's ankle impairments, the ALJ cited examination findings of her normal reciprocal gait, normal strength, and her ability to get up and down from the examination table as evidence undermining her testimony that she must walk slowly due to the pain in her right ankle. (*See* Tr. 24-25.) Still, those findings do not necessarily undermine her claims of severe pain and reduced mobility due to her right ankle impairments and again demonstrate the ALJ cherry-picking from mixed evidence. Indeed, though the most recent consultative examination initially shows normal reciprocal gait, it later specified that plaintiff could walk on heels and toes *with difficulty*, that her "[t]andem walking was abnormal. She had significant loss of balance, appeared tremulous, and had to grab the table and wall to catch from falling[,]" and that she could not hop on either foot. (Tr. 704.) Other treatment notes show that plaintiff's ankle impairments are worsening. (*See* Tr. 22; *see also* Tr. 936 ("Positive for balance issues (due to ankle and foot instability)"), Tr. 764, 801 ("I am concerned today about instability of her right ankle. She has an effusion/edema laterally and over the anterior joint, weakness on pronation and

tenderness over the ATF ligament. She seems to be rolling her foot recurrently which is suspicious for an unhealed tear of her ATF ligament. She is wearing winter boots today for support."), 40, 800, 859, 884.)

The ALJ's analysis of plaintiff's subjective symptom testimony is mischaracterized and unsupported by the record. Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's symptom testimony regarding her musculoskeletal impairments.

### b. PTSD, Anxiety, and Depression

The ALJ acknowledged plaintiff's testimony regarding her PTSD, anxiety, and depression which according to her, affects her ability to properly process and complete tasks. (Tr. 23, 57-58.) The ALJ noted "some deficits in mental functioning observed on examinations throughout the record[,]" namely that she "frequently presents as tearful on examination." (Tr. 23, citing Tr. 626, 651, 702, 749, 846, 938, 953, 965.) Even so, the ALJ pointed to "largely normal" findings in earlier records showing normal speech, memory concentration, and affect with her being well-dressed and groomed. (Tr. 23, citing Tr. 676.) Although the ALJ remarked that plaintiff's mental health has seemingly deteriorated over time (Tr. 23-24), the ALJ stated that because she was able to "follow instructions on exam[], remain[] calm, interactive, and cooperative in recent treatment notes[,]" she can engage in simple, routine tasks, and make simple work-related decisions. (Tr. 25, citing Tr. 938, 948, 964.)

Plaintiff challenges those ALJ's findings, arguing that there is ample evidence in the record supporting her mental health allegations, which was left unexamined and unexplained by the ALJ. (Pl.'s Br. at 13-14.) The court agrees. Although the ALJ discussed large portions of the

record showing plaintiff's mental health deterioration, there is no adequate explanation for why the ALJ discounted plaintiff's testimony about her PTSD, anxiety, and depression, all of which affect her ability to work. (*See* Tr. 23-24, citing Tr. 714 ("She abided by typical rules of communication but had crying spells and some difficulty focusing. She was alert but distracted. She was fully oriented but spelled 'world' correctly forwards but misspelled it backwards."), 938 ("She was very tearful throughout the appointment with inconsistent eye contact. She was alert and oriented. She was hyperverbal and difficult to interrupt at times. She had an anxious, serious, and labile affect.").)

As it relates to the objective medical evidence, the ALJ seemingly focused on plaintiff's ability follow instructions, remain calm, interactive, and cooperative in one examination, and "normal" earlier examinations to discount her testimony. This was error, as the Ninth Circuit has held that an ALJ errs by relying on isolated instances of improvement when evaluating the capacity for work of a claimant who has mental health impairments. *Garrison*, 759 F.3d at 1017 (holding "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021). The record demonstrates that plaintiff's symptoms related to her mental health impairments persisted and continued to worsen despite treatment. (*See* Tr. 40, 41, 654, 626, 702, 736, 749, 837, 852-53, 846, 898, 937, 948, 965.) Therefore, the ALJ's reliance on isolated instances of improvement to discount plaintiff's testimony that she has high anxiety, panic attacks, and difficulty in public was erroneous.

\ \ \ \ \

Page 10 – OPINION AND ORDER
*Marfa G. B. v. Comm'r Soc. Sec. Admin.*, 1:24-cv-01982-AR

*Routine and Conservative Treatment.* The ALJ also found that plaintiff's mental health treatment "has been routine, consisting primarily of medication management with relatively few adjustments. There is no indication of any psychiatric hospitalizations." (Tr. 25.) Evidence that a claimant received only routine, conservative treatment can be sufficient to discount her testimony regarding the limitations caused by an impairment. *Parra*, 481 F.3d at 750-51. Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti*, 533 F.3d at 1039. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, plaintiff asserts that the ALJ identified no authority to support the suggestion that a claimant must require in-patient treatment to be mentally disabled under the Act. (*See* Pl.'s Br. at 11.) The court agrees, as a claimant alleging psychiatric symptoms is not required to undergo inpatient hospitalization to qualify as disabled. *See Matthews v. Astrue*, No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012); *see also Quiroz v. Berryhill*, No. 8:16-CV-02127-GJS, 2018 WL 922130, at *7 (C.D. Cal. Feb. 14, 2018) ("Nothing in Social Security jurisprudence requires mentally impaired claimants to be subjected to harsh treatments—whether involuntary psychiatric hospitalizations, electroshock, or whatever other non-'routine care' the ALJ apparently believes is necessary to prove that a mentally ill claimant actually suffers from the functional limitations found by her treating psychiatrist—before they can be found to be disabled.") Moreover, the Ninth Circuit has cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations

omitted); *see also* Garrison, 759 F.3d at 1018 (determining that *Nguyen* prohibited ALJ from

considering claimant's occasional failure to take medication as a reason to reject credibility,

where noncompliance was "in part a result of her underlying bipolar disorder and her other

psychiatric issues"); *McTaggart v. Comm'r of Soc. Sec. Admin.*, 480 F. App'x 459, 461 n.2 (9th

Cir. 2012) (concluding that ALJ's reliance on claimant's failure to seek frequent mental health

counseling to reject credibility was "erroneous in light of *Nguyen v. Chater*[.]").

     The record reflects that plaintiff received psychiatric services routinely between 2021 and

2024, meeting regularly with a qualified mental health associate, psychologist and psychiatric

nurse practitioner. (*See* Tr. 559-610, 685-92, 693, 711-42, 907-978.) During that time, she was

regularly prescribed Lexapro, Buspar, Propranolol, and Gabapentin. (*See* Tr. 59, 966, 801.) The

ALJ found that plaintiff's treatment course for her mental health was conservative because it was

"primarily of medication management with few adjustments." (Tr. 25.) Courts have determined

otherwise. *See Parra*, 481 F.3d at 751 (defining conservative treatment as "treat[ment] with an

over-the-counter pain medication."); *Baker v. Astrue*, No. ED CV 09-01078 RZ, 2010 WL

682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering

medications that can alter behavior shows anything but conservative treatment."). The record

also shows that plaintiff was prescribed other medications, including Wellbutrin, but she

discontinued use because of side effects or ineffectiveness.[3] Courts have repeatedly rejected the

classification of mental health treatment as "conservative" when a claimant has been prescribed

---

[3]    In his decision, the ALJ acknowledges that plaintiff was "weaned off Wellbutrin to try
Buspar as needed due to reported panic attacks" and that Propranolol was "recently added to her
medications" after she reported worsening mental health symptoms. (Tr. 23.)

multiple psychiatric medications. *See Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018) (rejecting characterization of treatment as conservative where claimant was taking "a number of psychiatric medications"); *Childress v. Colvin*, No. EDCV 14-0009-MAN, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (treatment including years of therapy, prescription antidepressants, and prescription antipsychotics not properly characterized as conservative treatment); *Carden v. Colvin*, No. CV 13-3856-E, 2014 WL 839111, at *2 (C.D. Cal. Mar. 4, 2014) (collecting cases).

Moreover, the ALJ did not identify what additional treatment he would have expected plaintiff to receive for her mental health impairments. *See Perez v. Colvin*, No. EDCV 14-2626-JPR, 2016 WL 1274114, at *5 (C.D. Cal. Mar. 31, 2016) ("The ALJ cannot fault Plaintiff for failing to pursue nonconservative treatment options if none existed.") (citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (unpublished)). In sum, the ALJ's conclusion that plaintiff's mental treatment was routine and conservative is not supported by substantial evidence. Accordingly, this was not a specific, clear, and convincing reason to discount plaintiff's subjective symptom testimony and the ALJ has erred.

*Activities of Daily Living.* Lastly, the ALJ determined that plaintiff's ADLs "during the period at issue evidence an ability to perform simple, routine tasks with occasional contact with others." (Tr. 25.)

Contradiction with a claimant's activities of daily living (ADLs) may be a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d

625, 639 (9th Cir. 2007). Yet "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking or exercise does not in any way detract from [their] credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). To discount a claimant's credibility, the activity must be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take them out of context. *Id*. at 722-23.

Here, the ALJ used the second ground, finding that the record showed that plaintiff engaged in shopping, preparing food, using a phone and the internet, managing finances, and driving undermined her "tearfulness and emotional lability." (Tr. 25, citing Tr. 675, 714.) The ALJ also noted that "[w]hile describing herself in recent records as unable to maintain a schedule or keep commitments anymore and finding it very hard to concentrate, she is able to take care of not only herself but her animals." (Tr. 25, citing Tr. 933.)

Plaintiff takes issue with the ALJ's reasoning because he failed to identify any activity that contradicted her alleged symptoms and limitations, and did not provide adequate support for his conclusions. (*See* Pl.'s Br. at 11.) The court agrees, as none of those activities undermine plaintiff's alleged limitations about her physical or mental impairments. *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be

consistent with doing more than merely resting in bed all day."). Plaintiff testified that she is limited when performing even minimal activities. (Tr. 62-66, 256-63.) Neither the record nor the ALJ's analysis reveals any inconsistency between plaintiff's ADLs and her testimony, including that she has extreme difficulty walking, using her left arm, and sitting longer than 10 minutes. (Tr. 62-63, 66.) In short, the ALJ has failed to provide specific, clear, and convincing reasons supported by substantial evidence to reject plaintiff's symptom testimony. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

**B.    *Medical Opinion Evidence***

Plaintiff challenges the ALJ's consideration of the medical opinions of Thomas Shields, Ph.D., Danny Tudor, M.D., and Jaimee Bierhaus, NP. The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

**1.    Thomas Shields, Ph.D.**

On March 23, 2023, Dr. Shields completed a psychodiagnostic evaluation of plaintiff on behalf of the Agency. (Tr. 711-15.) Dr. Shields stated that plaintiff presented with persistent depressive disorder (dysthymic) with single episode of major depressive disorder persisting over

the past couple of years, moderate-to-severe with medication, with anxious distress, without psychotic features, features of PTSD, panic disorder, chronic pain, scoliosis in lumbar region, arthritis throughout her spine, chronic bilateral knee pain, left-shoulder pain, fatty liver disease, high cholesterol, and hypertension. (Tr. 715.) During examination, plaintiff was "distracted, anxious, and ha[d] difficulty controlling her crying during this interview. At times, this ma[de] it very difficult for her to focus and she even respond[ed] off topic []or endorse[d] symptoms she d[idn't] fully understand." (Tr. 715.) Dr. Shields also observed that "when her crying spells are under control, she can understand, remember, and carry out short and simple instructions." (Tr. 715.) Yet Dr. Shields also stated "owing to her []anxiety-related distractibility, she's likely to have difficulty sustaining concentration on tasks over extended periods of time. She's been depressed and socially withdrawn. Persistence and pace are expected to be negatively impacted by her depression and fatigue, anxiety, panic, and avoidant behavior, as well as low stress tolerance." (Tr. 715.)

The ALJ was not persuaded by Dr. Shields's opinion, for three reasons: it was supported to "some degree by contemporaneous findings," but ultimately was not entirely consistent with the record; Dr. Shields "fail[ed] to define what difficulty [plaintiff] would have with concentration, or define what he means by extended periods. Suggested limits on persistence and pace are even more vague"; and plaintiff's ADLs and her ability to "cooperate and be interactive" were inconsistent with Dr. Shields's opinion. (Tr. 26.)

Plaintiff asserts that the ALJ "took Dr. Shields's opinion out of context." (Pl.'s Br. at 18.) The court agrees and determines that, although the ALJ used the words "supported" and "consistent" once in his analysis, the substance of his discussion was inadequate. (*See* Tr. 26.)

Dr. Shields's conclusions were mostly mischaracterized. For example, the ALJ stated that Dr. Shields failed to define what difficulty plaintiff has with concentration even though his actual statement was that "owing to her mood [or] anxiety-related distractibility, she's likely to have difficulty sustaining concentration on tasks over extended periods of time." (Tr. 715.) In Dr. Shields's own examination of plaintiff, she was "distracted, anxious, and ha[d] difficulty controlling her crying during this interview. At times, this ma[de] it very difficult for her to focus and she even respond[ed] off topic []or endorse[d] symptoms she d[idn't] fully understand." (Tr. 715.) Thus, Dr. Shields's opinion that she would have difficulty sustaining concentration was not unfounded, as he witnessed it himself and documented it in his opinion.

And Dr. Shields's opinion on plaintiff's persistence and pace was not "vague[,]" as he stated that "[p]ersistence and pace are expected to be negatively impacted by her depression and fatigue, anxiety, panic, and avoidant behavior, as well as low stress tolerance." (Tr. 715.) The ALJ failed to discuss all of Dr. Shields's statement, which included the aspects of plaintiff's mental health that affect her persistence and pace—panic, anxiety, and depression. The ALJ characterized this limitation as vague, but without elaboration. To be sure, an "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). But Dr. Shields's conclusion was not inadequately supported by clinical findings or "vague" because he pointed to plaintiff's various mental health diagnoses and resulting symptoms as the reasons why her persistence and pace would be "negatively impacted." (Tr. 715.) Thus, the ALJ's reasoning is not supported by substantial evidence.

\ \ \ \ \

Page 17 – OPINION AND ORDER
*Marfa G. B. v. Comm'r Soc. Sec. Admin.*, 1:24-cv-01982-AR

### 2.    Jaimee Bierhaus

On January 29, 2024, Bierhaus, a psychiatric mental health nurse practitioner, provided a medical opinion regarding plaintiff's ability to work considering her physical and mental impairments. (*See* Tr. 906.) She opined:

> [Plaintiff] is a patient under my care at the Sky Lakes Behavioral Health Clinic. She is currently being treated at this clinic with medication management. Severe symptoms of her diagnosis impact her daily life and ability to function in a traditional work environment. I am recommending for her to apply for Social Security Benefits to help and support her quality of life.

(Tr. 906.)

The ALJ found Bierhaus's opinion unpersuasive because "whether the claimant is disabled or not is an issue reserved for the Commissioner, and Ms. Bierhaus's statement o[ffers] little guidance on any specific functional limits." (Tr. 27.)

Plaintiff argues that the ALJ failed to properly consider the supportability and consistency factors of Bierhaus's medical opinion. (Pl.'s Br. at 19-20.) But an ALJ can reasonably conclude that a medical source's failure to provide any qualitative or quantitative description of a claimant's specific functional limitations is inadequate. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ properly rejected a physician's opinion when it did not provide "useful statements" about the degree of the claimant's limitations and failed to specify the claimant's functional limits). Such is the case here, as Bierhaus's statement fails to provide any qualitative or quantitative description of plaintiff's functional limitations and only mentions the "[s]evere symptoms of her diagnosis[,]" but fails to explain what those are. (Tr. 906.) Thus, the ALJ's finding that Bierhaus's statement offered "little guidance on any specific functional limits" is without error, and the ALJ reasonably rejected this opinion. *See Stubbs-Danielson v. Astrue*, 539

F.3d 1169, 1174 (9th Cir. 2008) (explaining that the ALJ is not required to provide any reasoning to reject medical opinions that do not contain specific functional limitations).

### 3. Danny Tudor, M.D.

On October 6, 2022, Dr. Tudor provided a medical opinion about plaintiff's ability to work considering her physical and mental impairments. Dr. Tudor opined:

> I have been [plaintiff's] primary care provider since [July 16, 2021]. [Plaintiff] has multiple medical conditions that are impairing her ability to hold a job at this time. I will focus on the main problems that are impairing her ability to work. Anxiety and Depression: Patient has been dealing with crippling anxiety and depression that makes it nearly impossible to function in a normal work environment. She has received treatment for her anxiety and depression with both medication and counseling over the last [one and a half years]. She has had minimal improvements during this time although she has been diligent in her treatment and counseling. At this time and for the foreseeable future, I do not think she will be able to function in a normal work environment.

(Tr. 693.)

The ALJ made no reference to Dr. Tudor's opinion in his decision. Dr. Tudor's opinion constituted relevant medical evidence and should have been considered. Unlike Bierhaus's medical opinion, Dr. Tudor provided both qualitative and quantitative descriptions of plaintiff's functional limitations relevant to the question of disability. *See Ford*, 950 F.3d at 1156. Dr. Tudor discussed plaintiff's mental health impairments and how her symptoms have not improved despite her compliance with treatment and, therefore, his opinion was relevant. Failure to consider all the relevant medical source opinion evidence is clear error. 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (finding error where ALJ's decision did not discuss relevant medical source opinions). As consideration of additional medical source opinion

Page 19 – OPINION AND ORDER
*Marfa G. B. v. Comm'r Soc. Sec. Admin.*, 1:24-cv-01982-AR

evidence could have affected the ultimate disability determination, this error is not harmless. *See Tommasetti*, 533 F.3d at 1038.

## C.    *Lay Witness Testimony*

Plaintiff lastly challenges the ALJ's evaluation of the lay witness testimony from her former supervisor, Dawn F. and longtime friend Michelle S. (Pl.'s Br. at 20-21.) Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Nguyen*, 100 F.3d at 1467). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id*. at 1122 (quoting *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id*. at 1117.

The ALJ considered the lay witness statements and found that they were "somewhat consistent with the record" but ultimately found them to be "not entirely consistent with the record as a whole, including routine conservative treatment during the period at issue." (Tr. 27.) As argued by plaintiff, because the ALJ failed to supply legally sufficient reasons for rejecting her similar subjective complaints, the ALJ erred in relying on those same reasons to reject the lay witness testimony.

Page 20 – OPINION AND ORDER
*Marfa G. B. v. Comm'r Soc. Sec. Admin.*, 1:24-cv-01982-AR

**D.    *Remand***

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Remand for further administrative proceedings is necessary here. The ALJ erred by failing to address Dr. Tudor's medical opinion, by rejecting plaintiff's subjective symptom testimony, and by using those same reasons to reject the lay witness testimony. Those errors may have affected the remaining steps and issues concerning the ultimate determination of plaintiff's disability remain unresolved. *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made[.]") The errors here are not "inconsequential to the ultimate nondisability determination." *Treichler*, 775 F.3d at 1099.

On remand, the ALJ will reevaluate plaintiff's alleged symptoms and incorporate that testimony into the RFC, or provide with clear and convincing reasons why that testimony is rejected. The ALJ will also reevaluate the medical opinions of Drs. Shields and Tudor and incorporate them into the RFC, or provide substantial evidence with an explanation to why he rejected those opinions. Lastly, the ALJ will reevaluate the lay witness testimony. The ALJ should continue with the sequential evaluation, offer plaintiff an opportunity for a new hearing and reevaluate plaintiff's subjective symptom testimony. As warranted, the ALJ will reevaluate plaintiff's RFC, obtain any supplemental VE evidence, and conduct any other reasonable measures necessary. *Garrison*, 759 F.3d at 1019 (stating that remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for further administrative proceedings.

ORDERED: February 18, 2026.

_____
JEFF ARMISTEAD
United States Magistrate Judge